UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| CINDY BLINN ALLTON, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| V. | ) | NO. 2:18-CV-00055-JRG-MCLC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income were denied administratively by Defendant Commissioner following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that final decision of the Commissioner. The plaintiff has filed a *pro se* Complaint [Doc. 1], asking the Court to award her benefits, and followed that with a one page Motion for Summary Judgment [Doc. 13]. Defendant Commissioner has filed a Motion for Summary Judgment [Doc. 21].

**I. Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact

1

for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

## II. Sequential Evaluation Process

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

It is important to note, especially in this case, that even if the ALJ finds a severe impairment, that does not end the analysis. The ALJ still must continue along the sequential process in order to determine whether a particular claimant satisfies the disability criteria.

### III.     Plaintiff's Arguments

Allton filed this *pro se* complaint alleging that the ALJ "ruled without having or reviewing relevant ongoing medical diagnosis of [her] condition and disabilities per code of Federal Regulations…." [Doc. 1-1, pg. 1]. She noted that after being denied benefits requested to present additional evidence. [Doc. 1-3, pg. 1]. She indicated that she has been treated for Cushing's Syndrome and that the specialist to whom she had been referred was at Vanderbilt University Hospital. Her specialist's appointment was six months out. She indicates that "[t]here has been ongoing medical discovery as stated in my request for additional time." [Doc. 1-3]. She "disputes" the findings of the consultative examiner, Dr. Robert Blaine. She claims he was not qualified to render his opinion. She also claims that he did not explain "how my Cushing Syndrome compounded with my BPES was causing my medical condition/disabilities listed in my claim." [*Id.*]. She also claims she was misdiagnosed by the doctors. She also claims that the ALJ "did not have all the facts…." [*Id.*]. Finally, she argues that she had been "told by the medical specialist that [her] ongoing medical condition … related to the Cushing Syndrome is at a very serious level and can become life threatening and is physically debilitating." [Doc. 1-4, pg. 1].

After making these arguments, she filed a letter and seven exhibits with the Court also raising similar issues [Doc. 5]. Here she claimed she needed additional time before a decision was rendered on her disability claim because Cushing's syndrome takes a long time to diagnose. [Doc. 5, pg. 1]. In this document, she summarized her treatment history and outlined her physical and mental limitations, much like she did before the ALJ at the administrative hearing. She submitted

3

additional medical records for the Court to consider [Docs. 5-2(Attachment A) – 5-8(Attachment G).

## IV. Evidence in the Record

The Commissioner has accurately summarized the medical evidence of record in this case:

> Plaintiff underwent a left side L4-L5 discectomy in July 2012 due to chronic back pain and radiculopathy-type symptoms in her left leg (Tr. 256-58). At her follow-up appointment, she reported improvement; two weeks after the surgery, she was able to actively flex and extend the hips, knees, ankles, and toes without focal deficit, and a straight leg raise test was negative (Tr. 232).
> In May 2013, Plaintiff went to the emergency room and reported a six-day history left eye redness, swelling, numbness, and tingling (Tr. 252-53). She did not report any other symptoms, including back pain (Tr. 252-53). Musculoskeletal and neurological examinations were unremarkable (Tr. 254).
> …
> In August 2013, Plaintiff underwent a complete hysterectomy (Tr. 289-91, 341-43, 395-97). Following her recovery from this surgery, she returned to work for a short while in October 2013, but she "could not handle this new position" and was let go (Tr. 170). In mid- October 2013, Plaintiff went to Acute Care with a sudden onset of back pain that she described as a spasm (Tr. 426). She reported that her back surgery the prior year had worked "very well with nearly complete relief" (Id.). She reported she had been "somewhat stressed lately" and had recently become unemployed (Id.). The doctor noted Plaintiff moved slowly "as if concerned about pain" (Tr. 427). Her lower back was tender and flexion and extension of her back caused significant pain (Id.). Straight leg raising testing was negative (Id.). The doctor assessed back pain and lumbar strain, as well as acute reaction to stress (Id.). He prescribed Toradol, Cyclobenzaprine, and alprazolam (Xanax) (Id.).
> Plaintiff had a history of diverticulitis and underwent surgery for a bowel perforation in January 2014 (Tr. 299-303, 334-36, 371-74). A CT scan also showed bilateral adrenal masses typical of benign adenomas, and she was referred to endocrinology for further investigation (Tr. 299-300, 472). Following her surgery, in February 2014, Plaintiff reported she was doing well and was ambulating, passing gas, and had no further episodes (Tr. 366-67). April 2014 imaging revealed an enlarged thyroid gland with cysts as well as the adrenal masses (Tr. 419-20).
> At her routine health examination in August 2014, Plaintiff told her primary care doctor that she was "doing well medically" and "life [was] good" (Tr. 448-49). She had recently moved to a small town and had stopped taking fluoxetine because she "felt better with regards to her mood" following the move (Tr. 448). She admitted that her back problems were "resolved after surgery" and thus she had not taken any pain medications on a regular basis (Id.). She denied headaches, nausea, vomiting, or problems with muscles, bones, or joints (Tr. 449). Physical examination was unremarkable (Tr. 449). Her doctor restarted many of Plaintiff's medications

4

and noted she would be following up with her endocrinologist at Vanderbilt later that year (Tr. 450).

…

Plaintiff applied for disability insurance benefits in December 2014 (Tr. 147). In February 2015, at the initial level of review, State agency medical consultant Joseph Curtsinger, M.D., opined that during an 8-hour workday, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about 6 hours, and sit for about 6 hours, with an unlimited ability to push and pull (Tr. 71). She had no postural, manipulative, visual, communicative, or environmental limitations (Id.).

In August 2015, she established primary care at Rural Health Services Consortium, Inc. (Tr. 616-22). Plaintiff summarized her health history, and reported current symptoms of anxiety, bilateral lower extremity pain and numbness, and headaches (Tr. 616-20). Plaintiff stated her anxiety was associated with headache, irritability, and urinary frequency, but denied any nausea, vomiting, or weight gain (Tr. 616). Plaintiff attributed her anxiety to enlarged adrenal glands (Id.). Her leg pain hurt mostly in the mornings but was relieved by using sneakers (Id.). As for her headaches, they had begun one year earlier, were moderate, occurred daily, and were usually quickly resolved with over-the-counter Advil and rest, but could sometimes last two days (Tr. 617). Although not discussed in her history of present illness, Plaintiff also endorsed dizziness and back pain in her review of symptoms (Tr. 619-20). On examination, the only positive finding was bunions on both feet (Tr. 620). The provider assessed foot joint pain, generalized anxiety disorder, mixed hyperlipidemia, osteoarthritis, chronic tobacco use disorder, and adrenal disorder (Tr. 621). … X-ray of her left foot was normal (Tr. 623). X-ray of her right foot revealed spurs but no significant abnormality (Tr. 624).

At her follow-up in November 2015, Plaintiff updated her doctor on her endocrinology treatment at Vanderbilt for her adrenal problem (Tr. 608). Her anxiety had improved, and the provider characterized it as controlled (Id.). Plaintiff reported continued lower extremity pain but clarified that it was in her feet not her legs (Id.). It was aggravated by standing but relieved by wearing shoes and inserts (Id.). Plaintiff reported feeling down several days during the last two weeks and her provider assessed mild depression (Tr. 609, 611). In her review of symptoms, she endorsed difficulty concentrating and little interest or pleasure in doing things; the review of symptoms was otherwise negative (Tr. 611). On physical examination, the provider noted that Plaintiff was overweight and assessed bunions on both feet (Tr. 612). She also noted Plaintiff's right heel was tender; left heel was nontender (Id.). In addition to Plaintiff's chronic conditions, she assessed bunions and plantar fasciitis and referred her to podiatry (Tr. 613).

In December 2015, Plaintiff presented to a gastroenterologist for evaluation due to a family history of colon cancer, as well as a history of tubovilleus adenomas (Tr. 576-77). She denied abdominal pain, nausea, vomiting, constipation, diarrhea, or blood in her stool (Tr. 576). Her past medical history was significant for Cushing's disease (Id.). Physical examination was unremarkable (Id.). A colonoscopy revealed minimal diverticulitis, status post partial colon resection, and

5

a diminutive polyp of no clinical concern. She was told to follow up in five years (Tr. 578, 657-58).

In February 2016, at her pre-operative appointment to have surgery on her right foot, Plaintiff reported that her exercise level was moderate, with frequency two to three times each week (Tr. 600). In her review of symptoms, she reported a few day history of left sided upper back pain (Tr. 603). Physical examination revealed mild muscle tenderness overlying the left scapula region (Tr. 604). She had no pain in her cervical spine or shoulders (Tr. 604). Her psychiatric examination was normal (Id.). She was cleared for surgery (Tr. 605).

Later that same day, Plaintiff fell down steps, landed on her right knee on concrete, and went to the emergency room (Tr. 645-55). Plaintiff reported arthralgias but denied myalgias and back pain, as well as fatigue, nausea, dizziness, headaches, and behavioral problems (Tr. 647). Other than the expected right knee tenderness, her physical examination was normal (Tr. 648). The next week, Plaintiff underwent surgery on her right foot, and the doctor stated her postoperative prognosis was good (Tr. 580-81). She was fitted with orthotics (Tr. 589).

At her follow-up visit at Vanderbilt University Medical Center in April 2016, Plaintiff relayed her recent falls to the specialist and complained of worsening fatigue, feeling worse in the morning (Tr. 792). Her sleep was "okay" and she had normal mood (Id.). The doctor discussed with Plaintiff that she likely had mild adrenal cortisol autonomy related to macronodular hyperplasia (an endocrine disorder) (Id.).

Subsequent records indicate Plaintiff received clearance for left foot surgery in May 2016 (Tr. 585). At her pre-operation appointment, she told her primary care provider that the pain was "almost gone" in her right foot (Tr. 593). She reported that some of her medications had been adjusted at her last endocrinology visit at Vanderbilt (Id.). She related that she had fallen three times between Christmas 2015 until the end of February 2016 (Id.). She admitted that she was supposed to wear glasses all the time, but did not (Id.). Plaintiff described her lifestyle as a "moderate activity level," with exercise two to three times each week (Tr. 595). Plaintiff reported anxiety, joint pain, and muscle weakness, but denied fatigue, nausea, dizziness, weakness, headache, memory impairment, depression, back pain, joint swelling, and neck pain (Tr. 596). Physical examination revealed normal findings for every system, and she was cleared to have surgery on her left foot (Tr. 597).
…

In August 2016, Robert Blaine, M.D., conducted a physical consultative examination of Plaintiff at the request of the agency (Tr. 565-67). Plaintiff reported a history of back pain with surgery and continued spasms radiating down to her left thigh and numbness in her left toes (Tr. 565). She also reported an adrenal disorder, chest pain, diverticulitis, blepharophimosis, ptosis, epicanthus inversus syndrome (BPES) diagnosed at birth, and cervical dysplasia (Id.). Her review of symptoms was positive for chest pain and occasional diarrhea and vomiting (Tr. 566). Upon examination, her vision with glasses was OD 20/30 and OS 20/50, and she was unable to see the eye chart with both eyes due to double vision (Id.). Both eyes appeared small. The left upper eyelid drooped about halfway across the iris, but there was no sign of infection, drainage, or other problems noted (Id.). The cardiac

6

examination was normal (Tr. 567). Plaintiff did not use an ambulatory device and got up from the chair and onto the examining table without difficulty (Tr. 566). On musculoskeletal examination, she demonstrated 90 degrees flexion in both hips with internal rotation less than 5 degrees bilaterally, but external rotation, abduction, and adduction were normal bilaterally (Tr. 567). Flexion in the thoracolumbar spine was 90 degrees, extension was 15 degrees, and lateral flexion was 15 degrees to either side (Id.). All other joints were normal (Id.). Neurological examination showed sensation to be intact and symmetrical to light touch in all four extremities (Id.). Grip strength was 5/5 (Id.). Straight leg raising testing was negative, and she had a normal gait, tandem walk, heel and toe walk, and single-leg stand (Id.). She was able to squat about half way to the floor (Id.). Dr. Blaine assessed back pain, adrenal tumors, diverticulitis, chest pain of unknown etiology, BPES, and hysterectomy (Id.).

Dr. Blaine opined that during and 8-hour workday, Plaintiff could lift and carry up to 20 pounds occasionally, sit for 2 hours at a time and 8 hours total, stand for 10 minutes at a time and 2 hours total, and walk for 10 minutes at a time and 2 hours total (Tr. 569). She did not require the use of a cane to ambulate (Id.). She could continuously use both hands to reach, handle, finger, feel, push, and pull, and she could occasionally operate foot controls (Tr. 570). She could perform occasional postural activities with no climbing ladders or scaffolds (Tr. 571). Dr. Blaine opined that despite a vision impairment, Plaintiff was able to avoid ordinary hazards in the workplaces, could read small print and newspapers, could view a computer screen, and could determine differences in shape and colors of small objects (Id.). She could tolerate occasional exposure to unprotected heights and moving mechanical parts and could frequently operate a motor vehicle (Tr. 572). She could not walk a block at a reasonable pace on rough or uneven surfaces, but could perform other work-related activities (Tr. 573).

In September 2016, a pulmonary function test showed mild impairment in carbon monoxide diffusion capacity but no obstructive ventilator defect and no restriction (Tr. 630-62). Later that month, Plaintiff had another eye surgery (bilateral lateral rectus resection). Follow-up record indicates she reported no pain, but she felt there was some scar tissue (Tr. 784). Her vision at the time was 20/30 OD and 20/40 OS (Id.).

In January 2017, following her hearing and at the request of the ALJ, Elizabeth Jones, M.A., together with Diane Whitehead, Ph.D., conducted a psychological consultative examination of Plaintiff (Tr. 801-08). She drove herself to the examination, although she claimed she was not supposed to drive as she "barely passed [her] eye exam," got dizzy "a lot," and was scared to drive (Tr. 801). She presented with good grooming and hygiene (Id.). She complained of depression and anxiety (Tr. 803-04). Her symptoms depended on the day, and she rated her current depression as a "2" on a 10-point scale (Tr. 803). Some days she did not want to get out of bed, and experienced difficulty sleeping, low energy, and panic attacks (Tr. 803-04). She endorsed memory problems, examples were forgetting to feed her dog and leaving the water running (Tr. 803). She reported that she was a high school graduate and completed some college with no learning problems (Tr. 802). She engaged in social media and had a friend she saw once every two weeks (Tr. 804). She reported a history of abuse and childhood trauma, and she experienced

7

flashbacks from the events (Tr. 803). She took psychotropic medications prescribed her primary care provider; she had first been prescribed such medications at age 30 (Tr. 802). Years earlier, she had visited a counselor a few times, but had never been psychiatrically hospitalized and did not perceive herself in need of counseling (Id.). Upon examination, Plaintiff demonstrated an ability to recall information, such as historical information, her date of birth, the President of the United States, and a recent news event (Tr. 803). She appeared to hesitate before providing the name of her doctor (Id.). She could recall four of five items immediately and three of five items after 20 minutes, and there was no evidence of a disordered thought process (Id.). Her stream of conversation was appropriate, and she was observed as both rational and alert (Id.). The examiner thought Plaintiff functioned within the average range of intellectual functioning (Id.). She estimated the cost of several grocery items, completed serial sevens task rather quickly with no errors (Id.). Affect was moderately blunted with mood congruent and mild psychomotor agitation was noted (Id.). The doctor assessed persistent depressive disorder with anxious distress (Tr. 805).

Ms. Jones and Dr. Whitehead opined that Plaintiff had mild limitations in her ability to understand, remember, and carry out complex instructions (Tr. 806). She had no limitations in her ability to understand, remember, and carry out simple instructions (Id.). She had no limitations in her ability to make judgments on simple work related decisions, interact with supervisors, coworkers, and the public, or respond to changes in a routine work setting (Tr. 807).

**V.     Administrative hearing**

Plaintiff testified at the administrative hearing that she "ran the computer business systems…from development, quality assurance and … [made] sure that [they] had all the components necessary to run an efficient e-commerce business." (Tr. 47-48). She managed between 65 to 70 people (Tr. 48). She testified that she had problems with remembering and following detailed instructions (Tr. 49). She also indicated her medications make her nauseated every day, she stays dizzy most of the day, problems with her balance (Tr. 52), headaches, (Tr. 52), remains lying down for about 70 percent of her day (Tr. 54), experiences spasms in her back and numbness in her hands (Tr. 55). She indicated she could only stand for about 20 minutes at a time (Tr. 55), and has problems with walking, bending and stooping (Tr. 55-56). She indicated she suffered from anxiety attacks, and struggled with depression her (Tr. 57). She testified about her surgeries on her foot, back and eyes (Tr. 58-59).

8

The Vocational Expert (VE) testified that Allton's past work as a manager and systems analyst were sedentary and skilled. However, as she performed it, she classified it as light given the amount of walking she performed in it. The ALJ asked the VE to assume a hypothetical individual with same age, educational and work background as the claimant, but that she was limited to light work, but no jobs at unprotected heights or around dangerous equipment or machinery, no walking on unlevel or uneven ground, sit and stand option, changing positions frequently at every one-half hour, simple, routine jobs. (Tr. 62). In response to the hypothetical posed by the ALJ, the VE identified mail sorter, with 4,700 jobs in the regional economy, and 592,100 nationwide; inspectors, with 2,900 jobs regionally and 260,000 nationally; and assembler, with 2,700 jobs regionally, and 300,100 nationally.

## VI. ANALYSIS

### A. New Medical Records Submitted to the Court

The first issue Allton raises is whether the ALJ had all the medical information relevant to her ongoing medical diagnosis. As an initial matter, Allton has not identified any specific document dated prior to the ALJ's decision that was not already in the record. She was represented by counsel at the hearing and her attorney advised the ALJ that the record was complete (Tr. 44). At the administrative hearing, Allton had the opportunity to discuss at great length the extent of her limitations caused by her medical conditions. In fact, her counsel gave Allton the opportunity to advise the ALJ of anything else that he may have left out that she wanted the ALJ to consider (Tr. 61). The ALJ did not limit her testimony at all.

In her recent filings with the Court [Doc. 5], she provides details about the impact of her medical condition on her ability to function. But she also provided this same information to the ALJ at the administrative hearing. The ALJ was able to witness her testimony and make his

9

credibility judgments about whether her professed limitations were consistent with the medical evidence. Making credibility assessments is within the province of the ALJ and not this Court, so long as substantial evidence supports the ALJ's findings. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The Court has reviewed the ALJ's credibility assessment and finds it supported by substantial evidence. Although Allton complained of severe back pain, the ALJ pointed to numerous places in the medical records that the surgery essentially resolved the issue. On several occasions she advised medical personnel that she was not experiencing any back pain and desired no treatment for it.

Turning to Allton's claim regarding new medical evidence, in support of this claim, she submitted additional evidence to the Appeals Council and the Court for consideration. Her main concern seems to be that a diagnosis of Cushing's Syndrome takes a substantial amount of time to make and that the ALJ should not have proceeded with a disability determination while that diagnosis was being made. Because she has now been diagnosed with Cushing's Syndrome, her case should be remanded for the ALJ to consider this new development.

When a claimant submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court ... may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to

10

incorporate such evidence into the record in a prior proceeding..." 42 U.S.C. § 405(g). In such a remand, "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The evidence must be both new and material.

To show the new evidence is material, the claimant "must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). The Court will now summarize those records but finds that Allton has not demonstrated that there is a reasonable probability that the Commissioner's decision would have been different had these been considered.

### 1. Hawkins County Memorial Hospital Records [Doc. 5-2].

The first set of records Allton has submitted are the medical records from Hawkins County Memorial Hospital, dated August 24, 2016 [Doc. 5-2, pg. 1-2]. These records are not new because they were submitted to the ALJ and considered by the ALJ in his decision denying her benefits (Tr. 41, 627-37). In fact, the record submitted by Allton contain the results of her "Dxa Bone Density Axial Skeleton" examination [Doc. 5-2]. The same results on that document are included in the administrative record and were considered by the ALJ. (Tr. 633). That issue is without merit.

11

Case 2:18-cv-00055-JRG-CHS   Document 23   Filed 07/16/19   Page 11 of 19
PageID #: 925

In that same collective exhibit [Doc. 5-2], Allton included new medical records from Hawkins County Memorial Hospital. Here she includes a record dated May 12, 2017 but did not include the third page. On page "four," the record indicates an MRI was performed on October 20, 2017. The diagnostic impression was "no acute process" and "multilevel degenerative disc disease" and "probable left renal cyst" but that an ultrasound was needed for confirmation. [Doc. 5-2, pg. 3].

Allton does not attempt to show how these latest medical records would change the decision of the Commissioner. The ALJ found Allton suffered from degenerative disc disease and that it was a severe impairment. These records only support the ALJ's finding in that regard. They do not speak to any functional limitations and thus, do not provide any additional insightful into her condition. They certainly do not contradict the ALJ's conclusions regarding her back pain. This issue is without merit.

### 2. East TN Brain and Spine Center Records [Doc. 5-3].

Allton also submitted medical records from East Tennessee Brain and Spine Center. This record pertains to an October 20, 2017 visit. Here an MRI was ordered and resulted in Dr. Yong Bradley concluding that Allton suffered from degenerative disc disease at L3-4 and L4-5. The record also contains the imaging result, which showed "no acute findings, multilevel degenerative disc disease." [Doc. 5-3, pg. 4]. Again, this was consistent with the ALJ's finding that Allton suffered from degenerative disc disease. It does not address any functional limitations. This issue is without merit.

### 3. Medication List [Doc. 5-4]

Allton asked the Court to consider her medication list. She included at Doc. 5-4 a list of her medications. She has not shown why this is relevant, that is, whether the ALJ erred in failing

12

Case 2:18-cv-00055-JRG-CHS   Document 23   Filed 07/16/19   Page 12 of 19
PageID #: 926

to consider her medications or make a similar kind of argument. To be sure, she does not argue that this document would have altered the decision of the Commissioner. Thus, even if this list is new, it is not material. This issue is without merit.

### 4. HMG Medical Record [Doc. 5-5]

Allton has submitted a record that provides no meaningful information about her medical condition. It is a cardiac calcium score report with no score. This information is not material.

### 5. Frontier Mental Health [Doc. 5-6]

Allton has attached a screen shot of what she has written on the top "Frontier Mental Health" [Doc. 5-6]. This record contains a reference to "major depressive disorder" with a "start date" of May 3, 2018 as well as a reference to "Posttraumatic stress disorder" with the same "start date." It provides no other information. Again, this record provides no insight into her functional limitation nor would it alter the Commissioner's decision as the ALJ specifically considered all the limitations caused by Allton's mental impairments. She was also examined by Dr. Diane Whitehead, who opined that she only had mild limitations in her ability to understand, remember and carrying out instructions due to depression (Tr. 806); no limitation in her ability to appropriately interact with supervisors, co-workers, and the public or to respond to changes in a routine (Tr. 807). The ALJ accounted for those limitations in the RFC he formulated and appropriately resolved any conflict that existed in the medical evidence. In addition, this record was created well after the ALJ's decision and she has not demonstrated good cause for why it was not included in the record initially. This is especially true in light of the fact that her own attorney advised the ALJ that the record was complete.

### 6. Medical Record regarding CT of Abdomen and Pelvis [Doc. 5-7]

Allton submitted a medical record with the caption "CT Abdomen and pelvis wo IV

13

contrast – Details" from Vanderbilt University [Doc. 5-7]. It is dated May 16, 2018. This record reflects the existence of "one right adrenal adenoma and two left adrenal adenomas." [Doc. 5-7, pg. 1]. The impression was that "[a]ll three lesions are slightly increased in size when compared to prior imagine from 11/10/2014." [*Id.*]. The impression was that these displayed characteristics of "benign adenomas." [*Id.*]. Allton has not shown how this record, which describes her adenomas as benign, would alter the Commissioner's decision in the slightest. Thus, it is also not material.

### 7. Listing of Medical Appointments [Doc. 5-8]

Allton has also supplied the Court a listing of her medical appointments from November 10, 2014 through May 16, 2018. This provides no meaningful insight into the decision before the Court and is not material. The ALJ had all this information from the record regarding her attendance of her medical appointments.

### B. New Records submitted to the Appeals Council

Allton also submitted records just to the Appeals Council. She submitted a note from Dr. Schodowski where he indicates, on June 7, 2017, that Allton continues to have chronic pain in the balls of her feet (Tr. 11). Allton also submitted records from Hawkins County Memorial Hospital which indicate a diagnosis on October 9, 2017, of "bilateral back pain with left-sided sciatica, unspecific chronicity" (Tr. 8). The impression was no acute process and degenerative disc disease (Tr. 9).

The Appeals Council declined to consider these records because they were outside the time frame at issue. The ALJ entered a decision on Allton's claim on March 27, 2017. The additional evidence did not relate to the period before the ALJ. When such evidence is submitted to the Appeals Council well after the ALJ's opinion was issued, the Court is not permitted to consider it. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that

14

decision for substantial evidence under 42 U.S.C. § 405(g)) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

The exception to this rule is found in sentence six of 42 U.S.C. § 405(g). Allton, however, has not argued anything regarding this provision, waiving any consideration of it. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [the claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record[.]"). However, even reviewing these records for materiality, none suggests that the decision made by the Commissioner would have been different. The ALJ considered all these conditions in his thorough opinion and found none were disabling. To the extent these conditions were limitations, the ALJ properly considered them in formulating Allton's RFC.

Allton also submitted five letters from family and friends (Tr. 810-16) and one undated letter from Mansoor Tanwir, M.D. (Tr. 66). The Appeals Council found that Allton did not provide good cause for not submitting those letters or the letter from Dr. Tanwir earlier and declined to consider them.

Allton has not shown that these records warrant a sentence-six remand. "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted). The requirements that the evidence be "new" and "material," and that "good cause" be shown for the failure to present the evidence to the ALJ have been defined as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' ... Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' ... A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.... [T]he burden of showing that a remand is appropriate is on the claimant.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

Allton makes no attempt to show that this evidence would have made any difference to the ultimate decision. Dr. Tanwir's letter indicates that Allton's Cushing's Syndrome is the cause of her depression, muscle weakness, osteoporosis, and lipid abnormalities. Dr. Tanwir does not appear anywhere in the record. Thus, he is not a treating source. The ALJ, however, considered her depression in his decision and even found that her depression was a severe impairment. He also considered the other medical impairments and found that they were, while severe, nevertheless not disabling. Thus, Allton cannot show that this report was material as required under *Ferguson*.

The letters she submitted from her friends were also properly excluded. These were letters from individuals who have known her for years. She provided no justification as to why they could not have been submitted to the ALJ prior to the administrative hearing. In any event, they would not have materially effected the disposition of this case. The Commissioner correctly points out that they reiterate Allton's own subjective complaints regarding the effect her impairments have on her daily activities. The ALJ addressed these very issues at length in his decision and found that Allton's subjective complaints were inconsistent with the medical record.

Allton also argues that she timely submitted additional evidence within 25 days to the Appeals Council [Doc. 1-3]. She contends that she would have submitted additional evidence from her specialist at Vanderbilt University, but was unable to because of scheduling problems. There are at least two problems with Allton's argument. First, her attorney advised the ALJ that the record was complete. Allton did not advise the ALJ during the hearing that she was attempting to schedule a meeting with a specialist at Vanderbilt University, but because of scheduling problems could not get in prior to the hearing. Instead, she indicated that the administrative record

was complete. She did not ask that the administrative record be kept open. *See Smith v. Comm'r of Soc. Sec.*, 473 F. App'x 443, 446 (6th Cir. 2012)(the claimant "did not ask that the administrative record be kept open and he has not established good cause for failing to acquire this evidence in time to present it to the ALJ"). The same is true here. Allton has not shown any basis for not including this prior to the record closing.

**C.     Allton's challenge to Dr. Robert Blaine's qualifications**

Allton claims that Robert Blaine, M.D., was not qualified to render an opinion regarding her physical condition. She offers no basis other than the naked assertion that Dr. Blaine should not be able to render an opinion. The Court notes that Robert Blaine, M.D. is a licensed medical doctor and based on his education and experience is able to offer expert opinions in this field. *See* 20 C.F.R. § 404.1519g. He has done so countless times before this Court. Moreover, Allton did not object to the record at the administrative hearing. The record included Dr. Blaine's report. Because Allton does not provide any basis for her challenge to his qualifications, her argument is waived.

Her real complaint is with Dr. Blaine's opinion. She claims that Dr. Blaine did not explain how her Cushing syndrome affected her when combined with her other impairments. The Court finds this issue to be without merit. Dr. Blaine performed a physical consultative examination on August 24, 2016 (Tr. 565). He noted that she suffered from an adrenal disorder, which is what Cushing's syndrome is. He also noted her back pain, diverticulitis, chest pain, BPES, and cervical dysplasia. He considered all those conditions in rendering his opinion. He diagnosed her with a variety of conditions. He noted, however, that she did not use an assistive device, got up and down from her chair and on the examining table without difficulty, her grip strength was 5/5, as was the flexor and extensor strength of both upper and lower extremities; and negative straight leg raise bilaterally. He noted tendon reflexes as 1/4 in both extremities, 0/4 in both knees and ankles. Station, gait and tandem walk were normal. Heel and toe walk were normal; single-leg stand was

17

normal, and she could squat half way to the floor. (Tr. 567).

The ALJ considered Allton's testimony in light of the report of Dr. Blaine. She claimed she needed ambulatory devices to get around yet when she appeared for a physical examination with Dr. Blaine, she did not demonstrate a need for them. She was able to get on and off the examination table without difficulty. She claimed she had difficulty opening jars, but Dr. Blaine found that her grip strength was 5/5. She contends that she experienced numbness in her arms, fingers and toes yet Dr. Blaine found normal sensation in all her extremities. The Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). That is the responsibility of the ALJ. The ALJ did just that in this case. Substantial evidence supports the ALJ's decision not to credit Allton's testimony about the extent of her impairments especially in light of Dr. Blaine's examination, which largely contradicted Allton's claims.

**D.     Allton's miscellaneous arguments**

Allton also claims that she was misdiagnosed by the doctors. She does not develop this argument at all. She does not identify which doctor misdiagnosed her. It may be that she did not find Dr. Blaine's report favorable, and that his opinion was incorrect. But the ALJ had to resolve the conflict in the evidence and substantial evidence supports how the ALJ resolved those discrepancies. She also contends that she was "told by her medical specialists that [her] … Cushing's syndrome is at a very serious level…." [Doc. 1-4, pg. 1]. There is no question that she has serious medical conditions. The ALJ found severe impairments. However, Allton does not identify what doctors in the administrative record rendered that opinion and whether the ALJ failed to properly consider them. From a review of the entire record, it appears the ALJ evaluated all of the medical opinion evidence and resolved any conflicts in formulating her RFC and reaching his conclusion that she was not disabled.

18

## VIII. Conclusion

The Court finds substantial evidence supports the ALJ's reasoning in his decision finding Plaintiff not disabled. The Court RECOMMENDS that Allton's Motion for Summary Judgment [Doc. 13] be DENIED and the Commissioner's motion for summary judgment [Doc. 21] be GRANTED and this case DISMISSED for the reasons stated herein.[1]

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[1] **Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).**

19

Case 2:18-cv-00055-JRG-CHS   Document 23   Filed 07/16/19   Page 19 of 19
PageID #: 933